# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| LYNNE GOEROLD,<br>　　　　　Appellant, | DOCKET NUMBER<br>DE-0752-13-0015-I-1 |
| 　　　　v. | |
| DEPARTMENT OF HOMELAND<br>　SECURITY,<br>　　　　　Agency. | DATE: April 21, 2015 |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Marisa L. Williams, Esquire, and Rhonda Rhodes, Esquire, Englewood,
　　Colorado, for the appellant.

M. Bradley Flynn, Esquire, Southfield, Michigan, for the agency.

William R. Fenner, Esquire, San Francisco, California, for the agency.

## BEFORE

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

## FINAL ORDER

¶1　　　The agency has filed a petition for review and the appellant has filed a
cross-petition for review of the initial decision, which reversed the appellant's

---

[1] A nonprecedential order is one that the Board has determined does not add
significantly to the body of MSPB case law. Parties may cite nonprecedential orders,
but such orders have no precedential value; the Board and administrative judges are not
required to follow or distinguish them in any future decisions. In contrast, a
precedential decision issued as an Opinion and Order has been identified by the Board
as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

reduction in pay band and pay and denied her affirmative defenses. Generally, we grant petitions such as these only when: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. *See* Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, and based on the following points and authorities, we conclude that neither party has established any basis under section 1201.115 for granting the petition or cross-petition for review. Therefore, we DENY the petition for review and the cross-petition for review and AFFIRM the initial decision, which is now the Board's final decision. 5 C.F.R. § 1201.113(b).

¶2       The following background facts are undisputed. At all times relevant to this appeal, the appellant served as the Assistant Federal Security Director (Inspections) with the Aviation Operations Division of the Transportation Security Administration (TSA) for the Denver International Airport. Initial Appeal File (IAF), Tab 6, Subtab 4a. Effective September 2012, the agency reduced the appellant in pay band and pay based on a charge of unacceptable performance, which was supported by three specifications concerning her work performance in three critical areas of her position. IAF, Tab 6, Subtab 4b. The appellant filed a timely appeal with the Board and raised affirmative defenses of disability, age, and sex discrimination, retaliation, harmful error, and several prohibited personnel practices. Following a hearing, the administrative judge reversed the agency's action, finding, among other things, that the agency failed to prove that the appellant's performance standards were in compliance with its

management directive governing such standards, and that it therefore could not sustain its charge of unacceptable performance. IAF, Tab 79, Initial Decision (ID) at 20-25. The administrative judge also found that the appellant failed to prove any of her affirmative defenses. ID at 25-41.

¶3        The parties have filed cross-petitions for review of the initial decision. The agency argues on petition for review that its performance standards are valid and in compliance with its management directive, and the appellant argues that the administrative judge adopted an overly-narrow view of the evidence as to her claims of discrimination. Petition for Review (PFR) File, Tab 1 (agency's petition for review), Tab 12 (appellant's cross-petition for review). For the reasons that follow, because we find no reason to disturb the administrative judge's initial decision, the cross-petitions for review are DENIED and the initial decision is AFFIRMED.

The agency failed to prove its charge of unacceptable performance.

¶4        As the administrative judge correctly explained, because the appellant is a TSA employee, this appeal is governed by the provisions of the Aviation and Transportation Security Act (ATSA). *See Winlock v. Department of Homeland Security*, 110 M.S.P.R. 521, ¶ 5 (2009), *aff'd*, 370 F. App'x 119 (Fed. Cir. 2010). Under the ATSA, TSA employees are covered by the personnel management system that is applicable to employees of the Federal Aviation Administration (FAA) under 49 U.S.C. § 40122, except to the extent the Administrator of TSA modifies that system as it applies to TSA employees. *Id*.; 49 U.S.C. § 114(n). Under 49 U.S.C. § 40122(g)(2), many Title 5 provisions, including chapters 43 and 75, do not apply to TSA employees. *See id*. (chapter 75 does not apply to TSA employees); *see also id*., ¶ 20 n.* (chapter 43 does not apply to TSA employees). Instead, the FAA's internal procedures are generally applicable, and the Administrator of TSA has modified those procedures by issuing Management Directive (MD) 1100.75-3, which sets forth the agency's policies and procedures on the use of disciplinary and adverse actions to address employee performance

and conduct. *Id.*, ¶¶ 6-7; IAF, Tab 6, Subtab 4k. Pursuant to MD 1100.75-3, the agency may take an adverse or disciplinary action against a TSA employee for either conduct-based or performance-based reasons, and it does not create a separate procedure for removing or demoting an employee for unsatisfactory performance similar to chapter 43.[2] *See Winlock*, [110 M.S.P.R. 521](#), ¶ 20 n.\*; *see also* IAF, Tab 6, Subtabs 4j-4k.

¶5        Although this appeal is governed by the standards articulated in MD 1100.75-3, the agency has not created a separate performance-based removal procedure in MD 1100.75-3 analogous to chapter 43, and the Board must analyze the agency's adverse action as it would a performance-based action taken for cause under the general principles common to MD 1100.75-3 and chapter 75. *See Winlock*, [110 M.S.P.R. 521](#), ¶¶ 11, 20-22 (analyzing a performance-based removal under the general standards of an action taken for cause under MD 1100.75-3); *see also Fairall v. Veterans Administration*, [33 M.S.P.R. 33](#), 41 (an agency can take a performance-based action under either chapter 75 or chapter 43), *aff'd*, 844 F.2d 775 (Fed. Cir. 1987) (unpublished); ID at 4-5. When an agency effects a performance-based action for cause, there is no need for the Board to assess the validity of an employee's formal performance standards under chapter 43, and the agency does not have to provide an employee an opportunity to improve prior to taking such an action. *See Cowins v. Department of Veterans Affairs*, [64 M.S.P.R. 551](#), 554-55 (1994), *overruled on other grounds by Hamilton v. U.S. Postal Service*, [71 M.S.P.R. 547](#), 556 n.4 (1996). Rather, the agency must prove its charge of unacceptable performance by a preponderance of the evidence, and in proving its charge, the agency need only demonstrate that the performance standards at issue are reasonable and provide for an accurate measurement of the

---

[2] The Administrator of TSA has issued MD 1100.43-3 establishing performance standards for TSA employees. IAF, Tab 6, Subtabs 4i-4j. These standards, however, do not create a mechanism for removing or demoting an employee for unacceptable performance similar to chapter 43. *See* IAF, Tab 6, Subtab 4j at 13 (disciplinary actions based on unacceptable performance must be taken in accordance with MD 1100.75-3).

employee's performance. *See Graham v. Department of the Air Force*, [46 M.S.P.R. 227](#), 235 (1990); *see also Winlock*, [110 M.S.P.R. 521](#), ¶ 20 (the agency did not abuse its discretion in establishing the employee's performance standards).

¶6      Upon consideration of the agency's petition for review, however, we find no reason to differ with the administrative judge's factual conclusion that the agency failed to establish by a preponderance of the evidence that the appellant's performance was unacceptable as measured against the three critical elements of decision making, communication, and supervisory skills. *See Diggs v. Department of Housing & Urban Development*, [114 M.S.P.R. 464](#), ¶ 8 (2010) (mere disagreement with the administrative judge's factual findings does not constitute a basis for granting a petition for review); *see also* ID at 24. We further agree that the appellant's generalized performance standards did not provide an accurate measurement of the appellant's performance in her position for the purposes of taking a performance-based action for cause. *See Cowins*, 64 M.S.P.R. at 555 (the agency's evidence of the appellant's alleged failure to meet his performance standards was scanty and equivocal); *see also* ID at 23-24.

¶7      Specifically, we concur with the administrative judge that the appellant's generic performance standards, such as "analyzes information," "communicates relevant information," and "makes sound decisions," not only fail to give definition to the agency's expectations for the appellant, but are also inherently subjective and cannot provide an accurate measurement of her performance for the purposes of taking a performance-based action for cause. *See Cowins*, 64 M.S.P.R. at 555; *see also Graham*, 46 M.S.P.R. at 235; ID at 23-24; IAF, Tab 6, Subtab 4f at 2-6. We also agree with the administrative judge that these standards are not achievable because they lack any benchmark by which the appellant's performance could be accurately measured or assessed. *See* ID at 23-24 (finding unpersuasive the agency's attempt to flesh out the appellant's performance standards for communication by explaining that she should respond

to emails faster); *cf. Guillebeau v. Department of the Navy*, [362 F.3d 1329](#), 1336 (Fed. Cir. 2004) (explaining that an agency may not "adopt an unreasonable standard" under chapter 43).[3]

¶8      Having considered the agency's remaining challenges to the reversal of its adverse action, we find no reason to reach a conclusion different than that of the administrative judge. The administrative judge's initial decision reversing the appellant's reduction in pay band and pay under MD 1100-75.3 is AFFIRMED.

<u>The administrative judge properly denied the appellant's affirmative defenses.</u>

¶9      Although the administrative judge reversed the appellant's reduction in pay band and pay, she also found that the appellant failed to prove that the agency's action was the result of prohibited disability, age, sex, and retaliation-based discrimination. ID at 25-41. The appellant argues on petition for review that the administrative judge failed to consider all of the evidence in the record, and that she utilized an impermissibly narrow definition of similarly-situated employee in rejecting her disparate treatment affirmative defenses. PFR File, Tab 12 at 24-26. As explained below, we find no reason to disturb the administrative judge's findings, which we AFFIRM.

¶10      Where, as here, a hearing has been held, the Board will proceed to the ultimate question of whether the appellant has established by a preponderance of the evidence that the action appealed was discriminatory. *See Hardy v. U.S. Postal Service*, [104 M.S.P.R. 387](#), ¶ 29, *aff'd*, 250 F. App'x 332 (Fed. Cir. 2007). We agree with the administrative judge that although the appellant meets the definition of a qualified individual with a disability for the purposes of establishing a prima facie case of disability discrimination, she has otherwise failed to present any evidence that the agency's action was motivated by, or the

---

[3] Although chapter 43 is inapplicable in this appeal, we agree with the administrative judge that the Board may look to the general principles of chapter 43 in assessing performance-based actions for cause under MD 1100.75-3. *See Winlock*, [110 M.S.P.R. 521](#), ¶ 20 n.*; *see also* ID at 23.

result of, her disabled status. ID at 28, 30-32. The administrative judge made detailed factual findings concerning the agency's proffered, nondiscriminatory reasons for finding the appellant's performance unacceptable, and the appellant has failed to identify any comparator employees to whom she could compare herself. *See McCurn v. Department of Defense*, 119 M.S.P.R. 226, ¶¶ 17-18 (2013); *see also* ID at 30-32 & n.11. We further agree that although the agency cannot establish that its performance standards provided an accurate measurement of the appellant's performance, there is no evidence in the record that the agency lied about its reasons for taking the challenged action or that there is any other impropriety in its process which would suggest that the action was the result of disability-based animus. *See McCurn*, 119 M.S.P.R. 226, ¶ 16.

¶11     We similarly find a dearth of evidence supporting the appellant's allegations of sex-based or age-based discrimination or equal employment opportunity (EEO) reprisal. ID at 32-36, 39-40. First, we disagree with the appellant's argument on review that the administrative judge erred in finding that a 60-year-old male colleague who received a similar notice of proposed adverse action was not a similarly-situated employee for purposes of establishing disparate treatment. PFR File, Tab 12 at 24-25; ID at 36. Rather, we agree with the administrative judge that there are sufficient differences between the appellant and the proffered comparator, including a differing chain of command and the comparator's efforts to apply for a lower-level position within the agency prior to a final decision on the proposed adverse action, which justifies the difference in treatment.[4] *See Hooper v. Department of the Interior*, 120 M.S.P.R. 658, ¶ 6 (2014); *see also* ID at 36. We further find that the putative comparator identified by the appellant was older than the appellant at the time of the challenged action, thus further undermining the appellant's assertion of age-based disparate

---

[4] The agency withdrew the notice of proposed adverse action against the comparator after he applied for and received a lower-level position with the agency prior to the issuance of a decision letter on the proposed action. ID at 36.

treatment.[5] *See Miller v. U.S. Postal Service*, EEOC Appeal No. 01A54558, 2005 WL 2835227 (E.E.O.C. Oct. 19, 2005) (explaining that reverse age discrimination is not cognizable under the ADEA). Similar to our conclusions above, we also find no other evidence in the record which could support the appellant's ultimate burden of proving that her reduction in pay band and pay was the result of sex-based discrimination, and we defer to the administrative judge's credibility and factual findings that the deciding official had already determined to impose the appellant's reduction in pay band and pay prior to learning about the appellant's prior EEO activity. *See Diggs*, 114 M.S.P.R. 464, ¶ 8 (the Board must give deference to an administrative judge's credibility findings based explicitly or implicitly on the demeanor of witnesses); *see also Campo v. U.S. Postal Service*, 96 M.S.P.R. 418, ¶ 14 (2004) (the appellant must show that the deciding official was aware of the protective activity or was influenced by an individual with knowledge of the activity); ID at 39-40. The administrative judge's denials of the appellant's EEO affirmative defenses are AFFIRMED.[6]

¶12    Finally, we agree with the administrative judge that the appellant has failed to explain her prohibited personnel practice defenses under 5 U.S.C. § 2302(b)(2) or (b)(12). ID at 40. The appellant has not challenged these findings on review,

---

[5] The initial decision references that the identified comparator was 60 years old, and the appellant's Standard Form 50 reflects that the appellant was younger than 60 at the time of the challenged action. IAF, Tab 6, Subtab 4a. Although both the appellant and the comparator were older than 40 at the time of the challenged action, the Supreme Court has held that the Age Discrimination in Employment Act (ADEA) does not provide for a cause of action by a younger employee claiming that an older employee was shown preferential treatment. *See General Dynamics Land Systems, Inc. v. Cline*, 540 U.S. 581, 590-91 (2004 ("[T]he ADEA was concerned to protect a relatively old worker from discrimination that works to the advantage of the relatively young."); *see also* 29 C.F.R. § 1625.2 ("Favoring an older individual over a younger individual because of age is not unlawful discrimination under the ADEA, even if the younger individual is at least 40 years old.").

[6] We agree with the administrative judge that because the agency's adverse action was not sustained, there was no reason to adjudicate the appellant's harmful error affirmative defense. *See Van Prichard v. Department of Defense*, 117 M.S.P.R. 88, ¶ 25 (2011), *aff'd*, 484 F. App'x 489 (Fed. Cir. 2012).

*see* PFR File, Tab 12 at 28, and we find no reason to disturb them. Additionally, as we stated above, under 49 U.S.C. § 40122(g)(2), only select provisions of Title 5 apply to TSA employees; sections 2302(b)(2) and (12) of Title 5 are not incorporated by section 40122(g)(2), and we find no reason to conclude that they should apply to the appellant under the facts of this case. *See Edwards v. Department of Homeland Security*, 110 M.S.P.R. 243, ¶¶ 13-14 (2008) (finding that 5 U.S.C. §§ 2301(b)(7) and 2302(b)(12) do not apply to TSA employees).

## ORDER

¶13 We ORDER the agency to cancel the appellant's reduction in pay band and pay rate and to restore the appellant to her prior position of Assistant Federal Security Director (Inspections) effective September 9, 2012. *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984). The agency must complete this action no later than 20 days after the date of this decision.

¶14 We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision. We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order. If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶15 We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it took to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

¶16 No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement

with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

¶17 For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached. The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

### NOTICE TO THE APPELLANT REGARDING YOUR RIGHT TO REQUEST ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs. To be paid, you must meet the requirements set out at Title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203. If you believe you meet these requirements, you must file a motion for attorney fees WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your attorney fees motion with the office that issued the initial decision on your appeal.

### NOTICE TO THE APPELLANT REGARDING YOUR FURTHER REVIEW RIGHTS

You have the right to request further review of this final decision.

Discrimination Claims:  Administrative Review

You may request review of this final decision on your discrimination claims by the Equal Employment Opportunity Commission (EEOC).  *See* Title 5 of the United States Code, section 7702(b)(1) (5 U.S.C. § 7702(b)(1)).  If you submit your request by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit your request via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, NE
Suite 5SW12G
Washington, D.C. 20507

You should send your request to EEOC no later than 30 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with EEOC no later than 30 calendar days after receipt by your representative.  If you choose to file, be very careful to file on time.

Discrimination and Other Claims:  Judicial Action

If you do not request EEOC to review this final decision on your discrimination claims, you may file a civil action against the agency on both your discrimination claims and your other claims in an appropriate United States district court.  *See* 5 U.S.C. § 7703(b)(2).  You must file your civil action with the district court no later than 30 calendar days after your receipt of this order.  If you have a representative in this case, and your representative receives this order before you do, then you must file with the district court no later than 30 calendar days after receipt by your representative.  If you choose to file, be very careful to file on time.  If the action involves a claim of discrimination based on race, color,

religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

FOR THE BOARD:                              _____
                                            William D. Spencer
                                            Clerk of the Board

Washington, D.C.

| | DFAS CHECKLIST |
|---|---|
|  | INFORMATION REQUIRED BY DFAS IN ORDER TO PROCESS PAYMENTS AGREED UPON IN SETTLEMENT CASES OR AS ORDERED BY THE MERIT SYSTEMS PROTECTION BOARD |

AS CHECKLIST: INFORMATION REQUIRED BY IN ORDER TO PROCESS PAYMENTS AGREED UPON IN SETTLEMENT CASES

## CIVILIAN PERSONNEL OFFICE MUST NOTIFY CIVILIAN PAYROLL OFFICE VIA COMMAND LETTER WITH THE FOLLOWING:

1. Statement if Unemployment Benefits are to be deducted, with dollar amount, address and POC to send.

2. Statement that employee was counseled concerning Health Benefits and TSP and the election forms if necessary.

3. Statement concerning entitlement to overtime, night differential, shift premium, Sunday Premium, etc, with number of hours and dates for each entitlement.

4. If Back Pay Settlement was prior to conversion to DCPS (Defense Civilian Pay System), a statement certifying any lump sum payment with number of hours and amount paid and/or any severance pay that was paid with dollar amount.

5. Statement if interest is payable with beginning date of accrual.

6. Corrected Time and Attendance if applicable.

## ATTACHMENTS TO THE LETTER SHOULD BE AS FOLLOWS:

1. Copy of Settlement Agreement and/or the MSPB Order.

2. Corrected or cancelled SF 50's.

3. Election forms for Health Benefits and/or TSP if applicable.

4. Statement certified to be accurate by the employee which includes:

a. Outside earnings with copies of W2's or statement from employer.
b. Statement that employee was ready, willing and able to work during the period.
c. Statement of erroneous payments employee received such as; lump sum leave, severance pay, VERA/VSIP, retirement annuity payments (if applicable) and if employee withdrew Retirement Funds.

5. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.



**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts.

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

    a.  Employee name and social security number.
    b.  Detailed explanation of request.
    c.  Valid agency accounting.
    d.  Authorized signature (Table 63)
    e.  If interest is to be included.
    f.  Check mailing address.
    g.  Indicate if case is prior to conversion.  Computations must be attached.
    h.  Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected. (if applicable)

## Attachments to AD-343

1.  Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement. (if applicable)

2.  Copies of SF-50's (Personnel Actions) or list of salary adjustments/changes and amounts.

3.  Outside earnings documentation statement from agency.

4.  If employee received retirement annuity or unemployment, provide amount and address to return monies.

5.  Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)

6.  If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.

7.  If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases: (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

    a.  Must provide same data as in 2, a-g above.
    b.  Prior to conversion computation must be provided.
    c.  Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.